# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 23-cv-24604-BLOOM/Torres

TREVON BURTON,  as Personal Representative
For the Estate of Ronald Fitch, deceased,

      Plaintiff,

v.

CARNIVAL CORPORATION, and
CRUISE SHIP EXCRUSIONS, INC., and
XYZ CORPORATION(S),

      Defendants.

_____/

## OMNIBUS ORDER ON MOTIONS TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Carnival Corporation's ("Carnival") Motion to Dismiss Plaintiff's Complaint, ECF No. [21] ("Carnival's Motion"), and Defendant Cruise Ship Excursion, Inc.'s ("CSE") Motion to Dismiss Plaintiff's Complaint, ECF No. [25] ("CSE's Motion"). Plaintiff Trevon Burton filed a Response in Opposition to Carnival's Motion, ECF No. [27], to which Carnival filed a Reply, ECF No. [33]. Plaintiff also filed a Response in Opposition to CSE's Motion, ECF No. [29], to which CSE filed a Reply, ECF No. [34]. The Court has reviewed the Complaint, the Motions, the record in this case, the applicable law, and is otherwise fully advised. The Court also had the benefit of argument by counsel, *see* ECF No. [38], and thanks each attorney for his time and attention. For the reasons set forth below, the Motions are granted in part and denied in part.

## I.  BACKGROUND

### A.  Complaint

Plaintiff filed his Complaint on December 6, 2023, alleging twelve claims against Carnival and CSE (collectively "Defendants") in his capacity as Personal Representative for the Estate of Ronald Fitch ("Decedent").[1] *See* ECF No. [1]. Plaintiff also seeks to recover damages for himself, as the Decedent's grandson; and for and on behalf of the Decedent's beneficiaries, survivors and/or lineal descendants. ¶ 2. Plaintiff alleges Decedent was a fare-paying passenger aboard the *Carnival Celebration* and died while participating in the "St. John Champagne Catamaran Sailaway" snorkeling excursion (the "Excursion"). *See id.* ¶¶ 19-21. Decedent's death was caused by dangerous conditions associated with the Excursion, including "i) the strong rip current; ii) insufficient snorkel and/or swim instructions provided by Carnival and/or the Excursion Entities, … ; [and] iii) insufficient swim or snorkel gear …." *Id.* ¶ 56. Carnival owns and operates the *Carnival Celebration*, co-operated the Excursion with CSE, and marketed the Excursion to Plaintiff and Decedent. *See id.* ¶¶ 18-36. Plaintiff further alleges Carnival and the Excursion Entities are responsible for the marketing materials for the Excursion which Carnival broadcasts and publishes on its website. *See id.* ¶ 29.

Plaintiff's Complaint asserts 12 Counts: Count I – Misleading Advertising in Violation of Florida Statute § 817.41 (Defendants); Count II – Negligent Misrepresentation (Defendants); Count III – Negligent Selection or Retention (Carnival); Count IV – Negligent Failure to Warn (Carnival); Count V – General Negligence (Carnival); Count VI – General Negligence (Defendants); Count VII – Negligent Failure to Warn (Defendants); Count VIII – Negligence

---

[1] The Complaint also names XYZ Defendant(s) "[i]n the event discovery reveals different and/or additional entities contributed to the ownership, operation, and/or management of the subject excursion[.]" ECF No. [1] ¶ 5.

Based on Apparent Agency or Agency by Estoppel (Defendants); Count IX – Negligence Based on Joint Venture (Defendants); Count X – Third-Party Beneficiary (Defendants); Count XI – Wrongful Death Claim Brought Pursuant to Indiana State Law, U.S. Virgin Islands, or Applicable State Law (Defendants); and Count XII – *Quasi in Rem* "Maritime Rule B" Attachment and Garnishment (CSE).[2]

## B. Motions

In separate Motions, Defendants seek dismissal of Plaintiff's Complaint pursuant to Rule 12(b)(6). Defendants argue Plaintiff's misleading advertising and negligent misrepresentation claims must be dismissed for failing to allege Defendants made any actionable misrepresentations regarding the Excursion. Defendants also argue Plaintiff's negligence claims seek to impose heightened duties and fail to plausibly allege they had notice of any risk-creating condition. Further, Defendants contend Plaintiff's wrongful death claim is conclusory, duplicative, and improperly commingles multiple jurisdictions.[3]

The Court held a hearing on Defendants' Motions on July 8, 2024. ECF No. [38]. Counts VIII, IX, and X were dismissed for the reasons stated on the record. *Id.*; *see* ECF No. [35]. The Court also heard argument on Plaintiff's remaining claims. *See* ECF No. [38].

---

[2] Plaintiff filed a Notice of Voluntary Dismissal regarding Counts VIII, IX, and X shortly after Defendants filed their Motions. *See* ECF No. [35].

[3] CSE's Reply challenges the sufficiency of Plaintiff's allegations based on record evidence, including Decedent's autopsy report. *See generally* ECF No. [34]. CSE relies on this evidence to support its contention that Decedent "likely died because of his multiple life-threatening medical conditions" rather than from the dangers associated with the Excursion. ECF No. [34] at 5. The Court does not consider this argument, as it presents an issue of fact that is not properly resolved at the motion to dismiss stage. *Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1237 (S.D. Fla. 2015); *see Jumbo v. Ala. State Univ.*, 229 F. Supp. 3d 1266, 1269 (M.D. Ala. Jan. 23, 2017) ("A Rule 12(b)(6) motion tests the sufficiency of a complaint; it is not a vehicle to litigate questions of fact.").

## II.  LEGAL STANDARD

### A.  Failure to State a Claim for Relief

A pleading in a civil action must contain "a short and plain statement of the claim showing

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need

detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s

pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual

enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at

570). When a defendant moves to dismiss for failure to state a claim upon which relief can be

granted under Rule 12(b)(6), the court must accept the plaintiff's allegations as true and evaluate

all possible inferences derived from those facts in favor of the plaintiff. *See Am. Marine Tech, Inc.*

*v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1079 (S.D. Fla. 2019).

### B.  General Maritime Law

"Maritime law governs actions arising from alleged torts committed aboard a ship sailing

in navigable waters." *Guevara v. NCL (Bah.) Ltd.*, 920 F.3d 710, 720 (citing *Keefe v. Bah. Cruise*

*Line, Inc.*, 867 F.2d 1318, 1320-21 (11th Cir. 1989)). "In analyzing a maritime tort case, [courts]

rely on general principles of negligence law." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336

(11th Cir. 2012) (quoting *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)). "To

prevail on a negligence claim, a plaintiff must show that '(1) the defendant had a duty to protect

the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm.'" *Guevara*, 920 F.3d at 720 (quoting *Chaparro*, 693 F.3d at 1336).

The duty of reasonable care requires, "as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe*, 867 F.2d at 1322. "In other words, a cruise ship operator's duty is to shield passengers from known dangers (and from dangers that should be known), whether by eliminating the risk or warning of it." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020). Thus, a cruise-ship operator's liability often "hinges on whether it knew or should have known about the dangerous condition." *Guevara*, 920 F.3d at 720.

## III. DISCUSSION

### A.  Misleading Advertising and Negligent Misrepresentation Claims (Counts I and II)

Defendants argue Plaintiff's misleading advertising and negligent advertising claims must be dismissed because Plaintiff fails to allege Carnival or CSE made an actionable misrepresentation regarding the Excursion. Carnival contends its alleged misrepresentations are either true statements, irrelevant, or both. Plaintiff responds by conceding some of the allegations are not actionable. However, Plaintiff argues Carnival ignores the core misrepresentation in Counts I and II—that the Excursion was "easy" when it was in fact difficult—and thus concedes this is an actionable misrepresentation. Carnival replies that this is an irrelevant, non-actionable misrepresentation, as are the other alleged misrepresentations in Counts I and II. CSE argues Counts I and II should be dismissed for the same reasons and also fail to state a claim against it because, unlike Carnival, it did not publish, promote, or otherwise represent the Excursion's difficultly level to Plaintiff.

The Court is unpersuaded that Counts I and II must be dismissed for failing to allege an actionable misrepresentation. To prevail on his misleading advertising and negligent misrepresentation claims, Plaintiff must sufficiently allege the "(1) misrepresentation of a material fact; (2) that the representor made the misrepresentation without knowledge as to its truth or falsity or under circumstances in which he ought to have known of its falsity; (3) that the representor intended that the misrepresentation induce another to act on it; and (4) that injury resulted to the party acting in justifiable reliance on the misrepresentation." *Blow v. Carnival Corp.*, 674 F. Supp. 3d 1239, 1250 (S.D. Fla. 2023) (citing *Zhang v. Royal Caribbean Cruises, Ltd.*, No. 19-20773-CIV, 2019 WL 8895223, at *5 (S.D. Fla. Nov. 15, 2019)). Furthermore, negligent misrepresentation and misleading advertising claims are "subject to the heightened pleading standard of Rule 9(b), which requires a plaintiff to establish the 'who, what, when, where, and how' of the fraud." *Barham v. Royal Caribbean Cruises Ltd.*, 556 F. Supp. 3d 1318, 1325-26 (S.D. Fla. 2021) (quoting *Garfield v. NDC Health Corp.*, 466 F. 3d 1255, 1262 (11th Cir. 2006)).

Carnival specifically contends its alleged misrepresentations are not actionable. They include (1) four years old was the minimum age to participate in the Excursion; (2) the Excursion was safe and reliable, (3) CSE would be subject to personal jurisdiction in the United States; (4) CSE was insured; and (5) Carnival operated the Excursion. Plaintiff concedes his allegations regarding personal jurisdiction, CSE's insurance, and Carnival's operation of the Excursion are not actionable misrepresentations. However, Plaintiff argues Counts I and II otherwise allege specific, actionable misrepresentations made by Defendants regarding the difficulty level and safety of the excursion.

The Court agrees with Plaintiff. Counts I and II do not allege Carnival simply provided a general promise that the Excursion would be safe or easy, or suggested that it is suitable for four-

year-olds. As Plaintiff points out, Carnival ignores the core misrepresentations alleged in Counts I and II: misrepresenting that the Excursion was "easy" when "in reality," the Excursion "was not easy[,]" as evidenced by the "dangerous current and difficulty in swimming" the participants encountered. ECF No. [1] ¶¶ 74(a), 82(a). Plaintiff further alleges Carnival misrepresented "that 'four years old' was the minimum age for safe participation in the tour[,]" *id.* ¶ 74(c), 82(c), as evidenced in part by Carnival's later decision to "change[] the activity level to 'moderate'[,]" prohibit "people with cardiac conditions" from participating, and to change "the minimum age to 6 years old." *Id.* ¶¶ 74(a), (c), 82(a), (c).

Carnival's alleged misrepresentation that the Excursion was suitable for four-year-olds is certainly relevant. That allegation supports a reasonable inference that Carnival knew or should have known the Excursion was *not* suitable for young children. It also supports the claim that Decedent, an individual with cardiac conditions, reasonably relied on those misrepresentations when deciding to participate in the Excursion. The Court rejects Carnival's contention that the inference is unreasonable because its website "merely states that the minimum age for participation in the shore excursion is 4 years old." ECF No. [33] at 2. The Complaint includes a screenshot of Carnival's website, which informs passengers the Excursion is considered to be an "[e]asy activity" *and* notes the "[m]inimum age [is] 4 years[.]" *Id.* ¶ 25. Taken together, those allegations support the inference that the Excursion is similarly suitable for a man with cardiac conditions.

Carnival accurately observes that "the general promise of a 'safe, reliable, licensed, excursion' is not actionable." *Gibson v. NCL (Bahamas) Ltd.*, 11-24343-CIV, 2012 WL 1952667, at *6 (S.D. Fla. May 30, 2012); *see also Balaschak v. Royal Caribbean Cruises, Ltd.*, No. 09-21196-CIV, 2009 WL 8659594, at *9 (S.D. Fla. Sept. 14, 2009) (holding a representation that an excursion is safe "cannot form the foundation of a negligent-misrepresentation claim.") (citation

omitted)). However, Plaintiff is not merely asserting Defendants generally promised the Excursion would be safe or reliable. Plaintiff alleges Carnival made specific misrepresentations regarding the Excursion's difficulty level and further alleges Carnival misrepresented "that 'snorkel gear and instructions were provided'; when in reality, the Defendants did not provide reasonably safe snorkel gear or reasonably safe snorkel instructions[.]" *Id.* ¶¶ 74(b), 82(b). Plaintiff therefore alleges Carnival specifically misrepresented the Excursion was easy, that adequate snorkel equipment and instruction would be given, *and* that the Excursion would be safe and reliable.

Similar allegations were deemed sufficient in *Blow v. Carnival Corp.*, 674 F. Supp. 3d 1239 (S.D. Fla. 2023). In *Blow*, the court found the plaintiffs alleged "several specific and meaningful misrepresentations that Carnival allegedly made, including … that the snorkeling excursion was 'safe,' that Carnival stated 'we will have people there to look out for you,' that Carnival would 'provide snorkel gear,' and that the excursion was 'easy.'" *Id.* at 1250. As in *Blow*, the Court "does not need to repeat its review of the factual allegations here to explain why these misrepresentations, paired with [Plaintiff's] tragic death, create actionable misrepresentations." *Id.* Counts I and II plausibly allege "a series of misrepresentations by Carnival that created a very different expectation that the reality Plaintiff[] encountered[.]" *Id.*

The Court is unpersuaded *Blow* is distinguishable simply because, unlike here, "the impending danger of Hurricane Nora" rendered Carnival's misrepresentations about the excursion's safety "particularly egregious." *Id.* Counts I and II allege Carnival made specific misrepresentations regarding the Excursion's difficulty level. Plaintiff alleges Carnival should have known its statements were false because passengers have previously died on the *same* Excursion. *See* ECF No. [1] ¶ 63. Courts in this District have found similar allegations to be sufficient in the excursion context. *See Adams v. Carnival Corp.*, No. 19-cv-24578, 2020 WL

5246742, at *5 (S.D. Fla. Aug. 31, 2020) ("there is persuasive case law that holds that an alleged misrepresentation about an excursion being 'safe' can give rise to a cognizable negligent misrepresentation claim"); *Barham v. Royal Caribbean Cruises Ltd.*, 556 F. Supp. 3d 1318, 1326-27 (S.D. Fla. 2021) ("First, there was a specific reason that Defendant shouldn't have made these promises … Second, some of the alleged misrepresentations here are more specific than general promises of safety."). Consistent with *Blow*, *Adams*, and *Barham*, the Court finds Counts I and II plausibly allege Carnival made actionable misrepresentations regarding the safety and difficulty level of the Excursion.

CSE argues Counts I and II fail to state a claim because it did not advertise or make any representations to Plaintiff regarding the Excursion. For support, CSE accurately observes its role in making the alleged misrepresentation is limited to a single allegation:

> 29. Both Carnival and [CSE] are responsible for the contents of the shore excursion description excerpted above. This is because, before advertising and marketing the subject shore excursion to Carnival's passengers on Carnival's website, Carnival requires that [CSE] provide Carnival with a draft description of the subject excursion, and Carnival uses the written feedback it gets from [CSE] to describe the subject shore excursion to Carnival's passengers. Thus, both Carnival and [CSE] are responsible for the contents of the subject shore excursion description excerpted above which Carnival broadcasts and publishes on its website from Carnival's servers located at Carnival's principal place of business in Miami, Florida.

ECF No. [1] ¶ 29. CSE therefore argues Counts I and II fail to state a claim because Plaintiff's own allegations demonstrate "CSE did not have any control over how or what Carnival elected to promote, publish or represent to the Decedent or his family[.]" ECF No. [25] 5.

CSE provides no support for this position. Conversely, Plaintiff points out Fla. Stat. § 817.41 encompasses misrepresentations a defendant "make[s], or disseminate[s,] or cause[s] to be made or disseminated[.]" The statute also creates "a rebuttable presumption that the person named in or obtaining the benefits of any misleading advertisement … is *responsible for such misleading*

*advertisement*[.]" *Id.* § 817.41(4) (emphasis added). Plaintiff alleges CSE provided the draft description of the Excursion, Carnival posted that description on its website, and Decedent's reasonable reliance on that description caused his tragic death. CSE fails to show more is required, or that those allegations are otherwise insufficient. The Court thus concludes that CSE fails to demonstrate that Counts I and II must be dismissed.

### B.  Negligence Claims – Notice (Counts III – VII)

Defendants contend Plaintiff's negligent selection or retention, failure to warn, and general negligence claims (Counts III – VII) must be dismissed because Plaintiff fails to allege they had notice of any dangerous condition. Defendants argue the Complaint fails to identify a dangerous condition they either knew or should have known was dangerous. Further, Defendants contend the Complaint's allegations regarding prior incidents fail to plausibly allege Defendants had notice. Carnival also argues Plaintiff's allegations regarding its initial and annual inspections of the Excursion are conclusory. Plaintiff responds that he clearly alleges the combination of strong currents, insufficient instructions, and insufficient gear constitute a dangerous condition. Plaintiff also argues his allegations regarding substantially similar prior incidents and Carnival's inspections of the Excursion demonstrate Defendants had notice.

"To impose a duty in a maritime context, the shipowner must 'have had actual or constructive notice of a risk-creating condition[.]'" *Fawcett v. Carnival Corp.*, No. 23-21499-CIV, 2023 WL 4424195, at *2 (S.D. Fla. July 10, 2023) (quoting *Newbauer v. Carnival Corp.*, 26 F.4th 931, 935 (11th Cir. 2022)). To sufficiently allege Defendants had constructive notice of a risk-creating condition, Plaintiff must plausibly allege that a dangerous condition either (1) existed "for a sufficient length of time … or (2) prior incidents occurred in which 'conditions substantially similar to the occurrence in question must have caused the prior accident[.]'" *Holland v. Carnival*

*Corp.*, 50 F.4th 1088, 1096 (11th Cir. 2022) (citing *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989); quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661-62 (11th Cir. 1988)). In addition to being substantially similar to the incident in question, "the prior accident [also] must not have occurred too remote in time." *Jones*, 861 F.2d at 661-62 (citations omitted).

As a threshold matter, Plaintiff sufficiently alleges a combination of circumstances created a dangerous condition that caused Decedent's death. *See* ECF No. [1] ¶ 56 ("The Decedent's death [was] caused by dangerous conditions associated with the subject shore excursion that include … i) the strong rip current; ii) insufficient snorkel and/or swim instructions provided by Carnival and/or the Excursion Entities, … ; iii) insufficient swim or snorkel gear …."). Taken together, Plaintiff plausibly alleges the strong current coupled with insufficient instruction and snorkel equipment caused Decedent's death. The Court disagrees those allegations are either vague or conclusory and Defendants' unsupported contrary assertions are unpersuasive.

### i.  Inspections

Carnival next argues Plaintiff's allegations regarding its "initial approval process" and "yearly inspections[,]" ECF No. [1] ¶¶ 64-70, fail to plausibly allege Carnival was on notice of CSE's "incompetence and/or unfitness[.]" Id. ¶ 93. Carnival contends those allegations are deficient because they fail to "even minimally describe what the alleged inspection actually entailed[,]" or suggest similar conditions were present during those inspections. ECF No. [21] at 10. Carnival relies on *Mellnitz v. Carnival Corp.*, Case No. 18-24933, ECF No. [47] (S.D. Fla. April 15, 2019), *Doria v. Royal Caribbean Cruises, Ltd.*, Case No. 19-CV-20179-KMW, 2019 WL 13151601 (S.D. Fla. June 20, 2019), and *Singh v. Royal Caribbean Cruises Ltd.*, 576 F. Supp. 3d 1166 (S.D. Fla. 2021) for support. Plaintiff responds that the Complaint sufficiently alleges Carnival conducted initial and yearly inspections of the Excursion under similar conditions.

The Court agrees with Plaintiff. The complaints in *Mellnitz*, *Doria*, and *Singh* featured conclusory allegations that failed to plausibly allege inspections were conducted under similar conditions. *See Mellnitz*, Case No. 18-24933, ECF No. [47] at 13 ("you would need to allege that, in taking the prior excursions, they were under the same sea conditions …."); *Doria*, 2019 WL 13151601, at *4 ("Doria does not allege which inspection put Royal Caribbean on notice or whether the allegedly dangerous condition of the terrain was present at the time of the initial approval process"); *Singh*, 576 F. Supp.3d at 1184 ("Plaintiff fails to allege facts showing how RCL's approval process, inspections, or reviews could have placed RCL on notice of the alleged dangerous conditions.").

Here, the Complaint *does* allege Carnival's initial and annual inspections occurred under similar conditions such that it knew or should have known the Excursion was dangerous. *See, e.g.*, ECF No. [1] ¶¶ 68-70 ("Had Carnival inspected the excursion site, including the area where the Excursion Entities encouraged participants to swim, Carnival would have learned of the naturally strong current in the area of the subject excursion … Carnival's yearly inspections and/or approval process … did or should have revealed that the subject excursion was dangerous and/or not suitable for passengers due to: i) the strong rip current at the beach; ii) the lack of look-outs and/or lifeguards provided by Carnival and/or the Excursion Entities for the subject excursion; iii) the lack of functional life vests provided by Carnival and/or the Excursion Entities; and iv) the poor or completely absent emergency response plan promulgated by Carnival and/or the Excursion Entities.").

Moreover, Plaintiff is correct that courts in this District have found similar allegations plausibly allege notice. *See Adams v. Carnival Corp.*, 482 F. Supp. 3d 1256, 1269 (S.D. Fla. 2020) (allegations regarding "Carnival's internal procedures to do initial and annual inspections of its

shore excursions and Carnival selling the zip-lining excursion through its website is sufficient at the pleading stage. Those facts give rise to the reasonable inference that, given Carnival's monitoring of the safety of its excursion providers, it knew or should have known that [the shore excursion provider] did not provide passengers with helmets and adequate instructions and the zip-line brakes were faulty"); *see also* Blow, 674 F. Supp. 3d at 1251 ("Where a plaintiff alleges that a cruise line has an inspection process for excursion operators that should have revealed the defects alleged in the complaint, but in fact did not, that is typically sufficient to demonstrate that a defendant should have knowledge of the alleged defects, at least at the motion to dismiss stage") (citing *Heller v. Carnival Corp.*, 191 F. Supp. 3d 1352, 1358 (S.D. Fla. 2016) (Altonaga, C.J.)).[4] Consistent with those cases, the Court finds the allegations are sufficient to show that Carnival had actual or constructive notice that the Excursion's deficiencies created the dangerous conditions that caused Decedent's death.

### ii.  Substantially Similar Prior Incidents

Defendants next argue Plaintiff's allegations regarding substantially similar prior incidents are insufficient. According to Carnival, those allegations fail to provide "any facts or circumstances to show how these incidents establish that Carnival was on notice of the risk-creating condition **specific to the subject area**." ECF No. [21] at 11 (emphasis in original). Plaintiff responds that the Complaint details how several prior incidents are substantially similar and thus show Carnival knew or should have known the Excursion was dangerous. Plaintiff points out one such incident, *Pucci v. Carnival Corp. and Cruise Ship Excursions Inc.*, 146 F. Supp. 3d 1281 (S.D. Fla. 2015), featured (1) the same shore excursion site, (2) the same excursion provider,

---

[4] Those findings also comport with this Court's conclusion that similar inspection allegations plausibly alleged notice in *Hazelitt v. Royal Caribbean Cruises, Ltd.*, No. 23-CV-21014, 2023 WL 4763217 (S.D. Fla. July 26, 2023). *See id.*, at *5.

CSE, (3) the death of an excursion participant by drowning, and (4) many of the same allegedly dangerous conditions. *See* ECF No. [1] ¶ 63(a). Carnival replies that Plaintiff's Response improperly attempts to provide facts he failed to allege in his Complaint. Carnival also argues that the *Pucci* incident occurred nine years ago and is therefore too remote to constitute a substantially similar prior incident.

The Court is unpersuaded that Plaintiff's allegations regarding substantially similar prior incidents are insufficient. The Complaint alleges facts detailing how the Incident and the alleged prior incidents are substantially similar. For example, the Complaint provides the following details regarding *Pucci*:

> a. *Pucci v. Carnival Corp. and Cruise Ship Excursions Inc.*, 146 F. Supp. 3d 1281 (S.D. Fla. 2015) (on or about August 14, 2014, another Carnival passenger died while participating on the same or similar shore excursion, which was owned and/or co-operated by Defendant, Carnival Corp. and Defendant, Cruise Ship Excursions, Inc., and that passenger died due in full or in part to dangerously strong water currents in the area where the Decedent in this case also died);

ECF No. [1] 63(a).

Carnival fails to provide support that further factual detail is required. In *Nichols v. Carnival Corp.*, 423 F. Supp. 3d 1316 (S.D. Fla. 2019), for example, the court found the plaintiff's reliance on two prior incidents where passengers suffered heart attacks was insufficient because the plaintiff did not allege she suffered the same injury. *See id.* at 1323 ("[T]he two prior heart attack deaths may not have put Carnival on notice of the risks associated with the unidentified 'medical condition' from which the Decedent suffered."). Here, Plaintiff alleges the same injury as in *Pucci*, death by drowning—an injury that occurred on the *same* excursion involving the same operator, CSE.[5] The remaining cases relied on by Carnival feature plaintiffs who failed to allege

---

[5] For its part, CSE suggests *Pucci* is not a substantially similar prior incident because the plaintiff did not suffer from Plaintiff's cardiac conditions. That observation fails to show *Pucci* cannot serve as a substantially similar prior incident. Moreover, determining whether *Pucci* is in fact substantially similar is

*any* facts detailing how prior incidents were similar. *Bustamante v. Celebrity Cruises*, Ltd., 1:22-CV-20330-JLK, 2022 WL 16727079, at *2 (S.D. Fla. Nov. 2, 2022) ( "[T]here is no explanation as to how these incidents put [Defendants] on notice."); *Polanco v. Carnival Corp.*, No. 10-21716-CIV, 2010 WL 11575228, at *3 (S.D. Fla. Aug. 11, 2010) ("There are also no details about similar past incidents that Carnival allegedly failed to investigate. What were the incidents?"). Carnival's reliance on those cases is therefore misplaced.

Carnival also fails to support its position that *Pucci* cannot constitute a substantially similar prior incident because it occurred nine years ago. In addition to being substantially similar to the incident in question, "the prior accident [also] must not have occurred too remote in time." *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661-62 (11th Cir. 1988) (citations omitted). "Determining the remoteness of evidence is within the trial judge's discretion." *Id.* (citing *Keyes v. School Dist. No. 1,* 521 F.2d 465 (10th Cir. 1975), *cert. denied,* 423 U.S. 1066 (1976)). Carnival cites *Whelan v. Royal Caribbean Cruises Ltd.*, No. 1:12-CV-22481, 2013 WL 5583966 (S.D. Fla. Aug. 16, 2013) for support. However, *Whelan* found a prior incident that occurred six years before the subject incident was *not* too remote for notice purposes. *See id.*, at *3 ("The six previous incidents, occurring over a span of six years, are not too remote in time for the purposes of showing notice."). The Court declines to find that *Pucci* cannot serve as a substantially similar incident based on Defendant's unsupported assertion that nine years between incidents is too remote as a matter of law. Doing so here is particularly inappropriate considering Plaintiff alleges *Pucci* concerned the

---

premature at the pleadings stage. *See Fawcett v. Carnival Corp.*, No. 23-21499-CIV, 2023 WL 4424195, at *4 (S.D. Fla. July 10, 2023) ("Whether the allegedly prior similar incidents are indeed so similar as to impute notice to Defendant are questions the Court will not resolve on a motion to dismiss.") (citing *Lopez v. Carnival Corp.*, No. 22-cv-21308, 2022 WL 4598657, at *3 (S.D. Fla. Sept. 30, 2022); *Jumbo v. Ala. State Univ.*, 229 F. Supp. 3d 1266, 1269 (M.D. Ala. Jan. 23, 2017)).

same snorkeling excursion operated by CSE under similar conditions, culminating in death by drowning.[6]

The Court accordingly finds Defendants fail to meet their burden to show Counts III – VII must be dismissed for failing to plausibly allege notice.

### C. Negligence Claims - Duty of Reasonable Care (Counts III – VII)

Defendants argue Plaintiff's negligence claims also must be dismissed because Plaintiff fails to plausibly allege Defendants breached their duty of reasonable care. According to Defendants, general maritime law does not impose a duty to warn of excursion-related dangers, and any danger posed by the Excursion was open and obvious. Plaintiff responds that he sufficiently alleges Defendants had a duty to warn of known dangers associated with the Excursion and determining whether those dangers are open and obvious is premature on this record.

#### i.   Heightened Duties

Carnival specifically argues Plaintiff's negligence claims fail as a matter of law "because they allege improper duties over and above the duty to warn of known dangers in places where passengers are reasonably expected to visit." ECF No. [21] at 12-13. CSE similarly asserts Plaintiff seeks to impose heightened duties above the duty of reasonable care. Those arguments are meritless.

Carnival contends Plaintiff's failure to warn claim (Count IV) fails because its allegations regarding Carnival's inadequate inspections or failure to identify sufficient safety standards go far beyond the duty to warn. Plaintiff responds by pointing out this argument was rejected in *Blow*:

---

[6] Carnival also argues that Plaintiff's allegation that the risk-creating condition existed for a sufficient length of time to invite corrective measures is conclusory. However, that argument fails for the same reasons. As Plaintiff points out, the allegations regarding the length of time the Excursion featured dangerous conditions are supported by the nine-year-old drowning incident in *Pucci* and Carnival's annual inspections. *See* ECF No. [1] ¶ 92. Those allegations also support the notion that Carnival had years to detect and remedy the dangerous aspects of the Excursion.

As this Court has previously observed, "although generally the duty to warn is the most relevant duty regarding off-vessel excursions, a cruise ship might have additional obligations under the 'reasonable care' standard, if, for example, there is an agency relationship between the cruise ship and the excursion operator." *Bailey*, 369 F. Supp. 3d at 1310 (cleaned up). "Notably, the Eleventh Circuit did not state that the duty to warn was the *only* duty owed to a passenger while on shore." *Id.* (cleaned up). As the Plaintiffs observe, the correct formulation of Carnival's duty is that of "reasonable care under the circumstances." *Id.* The duty to warn of known dangers beyond the ship is, in fact, a subset of the general duty a of reasonable care that a shipowner owes to its passengers. *Id.*

*Blow*, 674 F. Supp. 3d at 1252.

Carnival acknowledges that under general maritime law, "a cruise line owes its passengers a duty to warn of known dangers beyond the point of debarkation in places where passengers are invited or reasonably expected to visit.'" *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (quotation omitted). However, Carnival contends the Complaint attempts to impose additional duties, relying on *Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327 (S.D. Fla. 2016). According to Carnival, *Thompson* found similar allegations "were premised on duties not recognized under general maritime law." ECF No. [21] at 13. That interpretation is incorrect. *Thompson* found "the allegations that Carnival failed to warn of the dangers present in the shore excursion are conclusory and lack any factual support." *Id.* at 1341. The court did not suggest those duties are not recognized under general maritime law. Rather, *Thompson* simply explained a plaintiff "must set forth factual allegations 'showing that the cruise line knew or should have known of any dangerous condition relating to the ... excursion that would give rise to a duty to warn.'" *Id.* (quoting *Gayou v. Celebrity Cruises, Inc*., No. 11–23359–CIV, 2012 WL 2049431, at *5 (S.D. Fla. June 5, 2012) (citation omitted)).

Plaintiff has done so here. Count IV alleges Carnival breached its duty to warn in several ways, including by failing "to adequately warn passengers (including Plaintiff's family and the

Decedent) of the dangers associated with participating in the subject excursion … of the strong current at the swim site for the excursion … that the Excursion Entities would not provide look-outs and/or lifeguards for the subject excursion … [and] that the Excursion Entities would not provide functional life vests[.]" ECF No. [1] ¶ 98(a)-(c). As discussed above, the Court finds Plaintiff plausibly alleges Defendants had notice that the Excursion was dangerous. Accordingly, "considering the allegations pled by Plaintiff, the Court 'cannot and will not say at this stage that the Plaintiffs' allegations are insufficient to support their negligence claims, that Carnival did not owe any duty other than the duty to warn, or that Carnival did not even owe a duty to warn.'" *Hazelitt*, 2023 WL 4763217, at \*5 (Bloom, J.) (quoting *Blow*, 674 F. Supp. 3d at 1252-53).

Carnival also fails to show Plaintiff's negligent selection or general negligence claims must be dismissed for seeking to impose heightened duties. Carnival asserts those claims improperly include allegations that Carnival breached its duty of reasonable care "by failing to provide … 'a reasonably safe excursion', 'provide look-outs', or equipment such as life vests." ECF No. [21] at 13 (citing ECF No. [1] ¶¶ 103, 109). For support, Carnival again relies on *Thompson*, as well as *Woodley v. Royal Caribbean Cruises, Ltd.*, 472 F. Supp. 3d 1194 (S.D. Fla. 2020). However, both cases simply found the plaintiff failed to plausibly allege the defendant had notice of the excursion's deficiencies. *See Thompson*, 174 F. Supp. 3d at 1341; *Woodley*, 472 F. Supp. 3d at 1205. Those claims were accordingly rejected for relying on implausible allegations—not because they sought to impose heightened duties.

*Thompson* is plainly distinguishable for the reasons discussed above. The same is true of *Woodley*. As this Court explained in *Hazelitt*, *Woodley* "held that an allegation that the defendant had a team of employees overseeing contractors and inspecting a contractor's operations was insufficient to meet the necessary pleading of the defendant's knowledge of the contractor's

incompetence or unfitness." *Hazelitt*, 2023 WL 4763217, at *5 (citing *Woodley*, 472 F. Supp. 3d at 1205). Here, Plaintiff provides detailed allegations explaining why Carnival knew or should have known the Excursion was deficient. *See* ECF No. [1] ¶¶ 59-71. Like the plaintiff in *Hazelitt*, Plaintiff's allegations regarding Carnival's "initial approval process, yearly inspections, and prior incidents" demonstrate Plaintiff's negligent selection and general negligence claims are plausible. *See id.*, 2023 WL 4763217, at *5; *see also Blow*, 674 F. Supp. 3d at 1251 (finding similar allegations "more than sufficient to demonstrate that Carnival knew or reasonably should have known of Vallarta Adventures' alleged incompetence.") (citation omitted)). The Court accordingly finds Defendants fail to show Plaintiff's failure to warn, negligent retention, or general negligence claims must be dismissed on this basis.[7]

### ii.  Open and Obvious

Defendants' assertion that Plaintiff's negligence claims fail because any danger associated with the Excursion was open and obvious is similarly unavailing. CSE provides no support or argument for this position. Carnival contends it had no duty to warn Plaintiff "of the risks associated with swimming in the ocean" because those risks are open and obvious as a matter of law. ECF No. [21] at 14. Plaintiff responds that Carnival's argument is premature because even if swimming in the ocean poses an open and obvious danger, the *extent* of the danger posed by the Excursion was neither open nor obvious. Carnival replies that no factual development is needed because the alleged dangers are open and obvious as a matter of law.

Carnival is correct that "water, including water concealing a submerged hazardous condition, is an obvious and patent danger[.]" *Locke v. Liquid Air Corp.*, 725 F.2d 1331 (11th Cir.

---

[7] CSE simply asserts Plaintiff's negligence claims must be dismissed for failing to "properly plead CSE's duty (either alleges heightened duties or fails to properly plead CSE's duty to warn)[.]" ECF No. [25] at 6. The Court is unpersuaded for the reasons discussed above.

1984). However, Plaintiff does not premise Carnival's duty to warn on an obligation to warn Decedent of the known dangers associated with water, or with swimming in the open ocean. Instead, Plaintiff alleges Carnival owed Decedent a duty to warn because it knew or should have known the Excursion featured inadequate equipment and instruction coupled with strong currents, among other inadequacies, yet it promoted the Excursion to its passengers as an easy activity. *See* ECF No. [1] ¶ 91.

Carnival's reliance on *Balachander v. NCL (Bahamas) Ltd.*, 800 F. Supp. 2d 1196 (S.D. Fla. 2011) and *Bernard v. World Learning Inc.*, 09-20309-CIV, 2010 WL 11505188 (S.D. Fla. June 4, 2010) is misplaced. In *Balachander*, for example, the plaintiff alleged the defendant failed to warn them of the dangers associated with voluntarily swimming in the ocean. *See Balachander*, 800 F. Supp. 2d at 1198, 1203. The court accordingly found "the dangers of drowning in the ocean are open and obvious as a matter of law[]" because "[u]nder these facts, there are no factual issues related to the 'open and obvious' nature of those dangers requiring further development through discovery." 800 F. Supp. 2d at 1203.

*Bernard* simply observed that the defendant was "likely correct that, as a matter of law, no duty to warn of the risks of voluntarily swimming in the ocean exists[.]" *Bernard*, 2010 WL 11505188, at *8 (footnote omitted). However, the court found "a genuine issue of fact exists as to whether [the plaintiff] was voluntarily swimming in the ocean or whether he was swept into the sea by an earthslide." *Bernard*, 2010 WL 11505188, at *8 (footnote omitted). The same is true here, albeit at the pleadings stage. As Plaintiff accurately observes, "even though a plaintiff may be able to ascertain the danger of an open and obvious condition via her senses, she may not understand the *extent* of the danger." *Frasca v. NCL (Bahamas), Ltd.*, 654 Fed. App'x 949, 953 (11th Cir. 2016) (emphasis in original).

Plaintiff's allegations support that the *extent* of the danger associated with the Excursion was not open and obvious even if some of the associated risks—for example, snorkeling in the open ocean—might be. As in *Blow*, "while the dangers of swimming in the open ocean may be 'open and obvious' in a general sense, the specific dangers associated with the Plaintiffs' snorkeling excursion—especially subject to the weather conditions imposed by Hurricane Nora—may not be." 674 F. Supp. 3d at 1252 (citing *Barham v. Royal Caribbean Cruises Ltd.*, 556 F. Supp. 3d 1318, 1329 (S.D. Fla. 2021)). Although no natural disaster is at issue, determining whether the specific dangers presented by the Excursion were open and obvious is nonetheless premature at this stage. The Court cannot determine whether the combination of circumstances Decedent allegedly faced were uniformly open and obvious. The Court concludes that whether Defendants had a duty to warn Decedent "about the 'open and obvious' dangers of snorkeling in the open ocean is not properly resolved at this time." *Id.*

### D.  Wrongful Death Claim (Count XI)

Defendants contend Plaintiff's wrongful death claim (Count XI) must be dismissed because it improperly commingles numerous wrongful death statues with general maritime law. Count XI specifically asserts either the U.S. Virgin Islands, Indiana, or Florida's wrongful death statutes *may* apply to this claim. As Defendants observe, Count XI also does so without alleging supporting facts articulating why each jurisdiction may apply.

Defendants argue this is improper because this action is governed by general maritime law. Defendants acknowledge maritime law permits supplementing wrongful death claims with state law remedies. However, determining which jurisdiction applies requires conducting a choice-of-law analysis, which Plaintiff fails to undertake here. Carnival also argues Count XI is duplicative because the Counts I – X are premised on the same allegations and also seek damages under those

wrongful death statutes. *See generally* ECF No. [1]. Plaintiff responds that Count XI is simply a wrongful death claim that pleads entitlement to multiple wrongful death statutes in the alternative. Plaintiff also contends conducting a choice-of-law analysis is premature at this stage in the proceedings, as it is currently unclear which jurisdiction applies to this claim. Plaintiff explains he pled Count XI as a separate wrongful death claim "to address Judge Altonaga's holding in *Pucci v. Carnival Corp.* that in order to recover for emotional injuries under U.S. Virgin Islands law, the plaintiff must plead a wrongful death claim for same."[8] *Id.* at 20 (citing *Pucci*, 146 F. Supp. 3d at 1293).

As the Parties observe, because Decedent's death "occurred in navigable waters, general maritime law governs the case and provides the wrongful death cause of action." *Goodloe v. Royal Caribbean Cruises, Ltd.*, 1 F.4th 1289, 1293 (11th Cir. 2021). "General maritime law does not, however, provide a comprehensive remedy for all deaths that occur in state territorial waters. Instead, state statutes may supplement maritime law and allow for remedies beyond those afforded by maritime law alone." *Id.* (citing *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 216, (1996)). To determine which statute statue may provide additional remedies, the Court must conduct a choice-of-law analysis guided by the factors articulated by the Supreme Court in *Lauritzen v. Larsen*, 345 U.S. 571 (1953). *Goodloe*, 1 F.4th at 1293. The *Lauritzen* factors provide "a framework to help determine which sovereign has the most significant connection to the case and the greatest interest in having its law applied." *Id.* at 1294 (citing *Lauritzen*, 345 U.S. at 582).[9]

---

[8] Carnival withdraws its argument that Plaintiff cannot claim entitlement to emotional damages based on this clarification. However, Carnival reiterates its argument that Count XI remains an improperly pled wrongful death claim.

[9] The *Lauritzen* factors consist of the "(1) place of the wrongful act, (2) law of the flag, (3) allegiance or domicile of the injured, (4) allegiance or domicile of the defendant shipowner, (5) place of contract, (6) inaccessibility of the foreign forum, and (7) law of the forum." *Goodloe*, 1 F.4th at 1294 (citing *Lauritzen*, 345 U.S. at 582).

The Parties agree general maritime law governs Plaintiff's wrongful death claim, and that this claim can be supplemented by additional state law remedies. Defendants provide no support for their position that Count XI must be dismissed because Plaintiff fails to conduct a choice-of-law analysis. As Plaintiff points out, "in some cases the motion to dismiss stage is too early to undertake a choice-of-law analysis." *Terrill v. Electrolux Home Prod., Inc.*, 753 F. Supp. 2d 1272, 1280 (S.D. Ga. 2010). That is certainly the case here—Count XI contains conclusory allegations regarding each jurisdiction, and the Parties do not meaningfully engage with the *Lauritzen* factors in their briefing. However, the Court is unpersuaded this means Count XI should survive dismissal.[10] As Carnival points out, Count XI is both conclusory and duplicative of the relief sought in the other eleven Counts in the Complaint.

Plaintiff's assertion that Count XI is properly pled in the alternative is unpersuasive, as is his reliance on *Pucci*. Plaintiff is correct that Rule 8 permits a plaintiff "to set out 2 or more statements of a claim or defense alternatively … either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2). However, such an alternative statement or statements is only sufficient under Rule 8(d) "if any one of them is sufficient." *Id.* Plaintiff's wrongful death claim is plainly insufficient. Count XI is styled as a "Wrongful Death Claim Brought Against Defendants Pursuant to Indiana Law (Ind. Code 34-23-1-1), U.S. Virgin Islands (5 V.I.C. § 76) and/or Applicable State Law". ECF No. [1] at 51. Count XI contains no allegations articulating why Indiana, U.S. Virgin Islands, or any other state law may apply. It simply concludes by demanding "damages on behalf of Decedent … as allowed under the applicable state law and/or USVI

---

[10] Plaintiff suggests the Court should first determine liability before conducting the *Lauritzen* choice-of-law analysis. Plaintiff observes the district court did so in *Goodloe*. As the Eleventh Circuit explained, however, "[r]ather than litigate this choice-of-law question before trial, the parties agreed to address it only if a damages award made it necessary." *Goodloe*, 1 F.4th at 1292. The Court does not consider when it should conduct this analysis considering its conclusion Plaintiff fails to sufficiently allege a wrongful death claim in the first place.

wrongful death statute(s) and/or survival act(s)," as well as "all damages recoverable under General Maritime Law and/or applicable state law." *Id.* at 53. The sole allegation that speaks to the potential applicability of those jurisdictions is incorporated by reference:

> "The waters in which the Decedent drowned were territorial waters of the U.S. Virgin Islands (i.e. within three nautical miles of the U.S.V.I. shore); and thus, are waters of a U.S. territory, such that the Death on the High Seas Act does not apply; but U.S. territory and/or state law wrongful death remedies and damages do apply, such as U.S. Virgin Islands, Indiana and/or Florida wrongful death remedies/damages, and are invoked herein."

*Id.* ¶ 55. As with Count XI itself, however, this allegation is conclusory, and offers no details regarding the applicability of Indiana, Florida or any other state's wrongful death statute. Moreover, Carnival accurately observes those allegations are duplicative. All twelve Counts allege entitlement to damages "as allowed under the applicable state law and/or USVI wrongful death statute(s) and/or survival act(s)," and incorporate the allegation detailed above. *See generally* ECF No. [1].

Plaintiff's reliance on *Pucci* is therefore misplaced. The plaintiff in *Pucci* failed to separately plead a wrongful death claim, "either under the law of the Virgin Islands or otherwise." 146 F. Supp. 3d at 1293. The court therefore struck the plaintiff's allegation claiming entitlement to emotional damages under the U.S. Virgin Island's wrongful death statute. *See id.* The Court agrees with *Pucci's* observation that a wrongful death claim should be pled separately. However, Count XI is a conclusory wrongful death claim premised on at least three non-maritime jurisdictions: the U.S. Virgin Islands, Indiana, and Florida. Plaintiff alleges Decedent drowned in the territorial waters of the U.S. Virgin Islands. ECF No. [1] ¶ 55. Regarding Indiana, Count XI incorporates a single allegation noting Plaintiff and Decedent are citizens of Indiana. *See* ECF No. [1] ¶ 1. Count XI similarly incorporates allegations explaining Carnival's principal place of

business is Miami, Florida, and that both Defendants are properly subject to Florida law based on their marketing efforts and co-operation of the Excursion. *See, e.g.*, ECF No. [1] ¶¶ 3, 11, 13, 29.

Despite incorporating those allegations, Count XI entirely fails to allege why each jurisdiction may apply. Instead, Count XI incorporates general jurisdictional allegations relevant to all Counts and asserts *any* of those jurisdictions may or may not apply. ECF No. [1] ¶ 55 ("U.S. territory and/or state law wrongful death remedies and damages do apply, such as U.S. Virgin Islands, Indiana and/or Florida wrongful death remedies/damages"). As noted, this is particularly problematic considering *every* Count incorporates those jurisdictional allegations and claims entitlement to the same relief. Plaintiff is certainly permitted to plead wrongful death claims premised on U.S. Virgin Islands, Indiana, or Florida law in the alternative. As *Pucci* instructs, however, those claims should be pled in separate counts, complete with allegations explaining why each jurisdiction *may* apply to Plaintiff's claims. *See Pucci*, 146 F. Supp. 3d at 1293. The Court therefore finds Count XI must be dismissed without prejudice. Plaintiff shall have leave to re-plead its wrongful death claim in a manner consistent with this Order.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Carnival Corporation's Motion to Dismiss Plaintiff's Complaint, **ECF No. [21]**, and Cruise Ship Excursion's Motion to Dismiss Plaintiff's Complaint, **ECF No. [25]**, are **GRANTED IN PART AND DENIED IN PART**.

2. Plaintiff must file an Amended Complaint consistent with this Order by **August 29, 2024**.

Case No. 23-cv-24604-BLOOM/Torres

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 15, 2024.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies To:

Counsel of Record